701 So.2d 457 (1997)
Billy Wayne SINCLAIR
v.
Fred KENNEDY, Warden.
No. 96 CA 1510.
Court of Appeal of Louisiana, First Circuit.
September 19, 1997.
*458 Billy Wayne Sinclair, Homer, Plaintiff-Appellant in Proper Person.
Roxie F. Goynes-Clark, Dept. of Public Safety & Corrections, Baton Rouge, for Defendants-Appellees Fred Kennedy, Warden, et al.
Before CARTER, LeBLANC and PARRO, JJ.
PARRO, Judge.
This is an appeal from the trial court's dismissal with prejudice of an inmate's petition for a writ of habeas corpus, based on its conclusion that the inmate had no cause of action. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
The plaintiff in this action is Billy Wayne Sinclair, an inmate in the custody of the Louisiana Department of Public Safety and Corrections ("DPSC"), pursuant to a murder conviction obtained in June 1966. Although Sinclair originally received a sentence of life imprisonment, the sentence was commuted in 1992 to ninety (90) years, thereby making him eligible for parole consideration. On July 14, 1994, Sinclair appeared before the Louisiana Board of Parole ("parole board"), but parole was denied based on the serious nature of the offense, police and/or juvenile records, prior felony conviction(s), and law enforcement and/or judicial objection.
Sinclair's petition states that, although his original conviction and sentence was lawful, his continuation in custody is unlawful because the parole board violated his constitutional rights to due process under the constitutions of the United States and Louisiana. Sinclair claims due process protection because he has a liberty interest in parole created by and inherent in "the old-timers law," LSA-R.S. 15:574.4(A)(3), in combination with the rehabilitation directives of LSA-R.S. 15:574.4(E) and LSA-R.S. 15:828(A). He argues that although the Louisiana Supreme Court stated in Bosworth v. Whitley, 627 So.2d 629, 633 (La.1993), "it is apparent that the Louisiana parole statutes do not create an expectancy of release or liberty interest in general," that case did not specifically address whether a liberty interest exists for the truly rehabilitated prisoner who meets all the "substantive predicates" under the above-referenced statutes.
Sinclair claims the parole board infringed his constitutional due process rights by abusing its discretion when it denied his application for parole on the basis of false, incorrect, and unconstitutional information in his record and without providing proper notice of its policies governing the conduct of its hearing. Sinclair urges that because he satisfies all the criteria of the parole statutes, and because the parole board abused its discretion in the conduct of the hearing, he must be returned to the community as promptly as practicable. In the alternative, he seeks a new hearing consistent with due process. His prayer for relief asks that a writ of habeas corpus issue, commanding Fred Kennedy, the warden holding him, to bring Sinclair before the court and state the authority for keeping him in custody.
In response to the petition, Kennedy filed an exception of failure to join the parole board as an indispensable party. The exception was granted and Sinclair was ordered to amend his petition to name the parole board as a party defendant, which he did.[1] Sinclair also filed an amended and supplemental petition, claiming the only vote cast against him at a rehearing before the parole board was in retaliation for previous legal actions he had *459 filed against the parole board, and that a 1991 legislative amendment to the parole scheme requiring a unanimous vote of the parole board to grant release violated the prohibition against ex post facto laws, as applied to him. He also alleged the parole board failed to follow its own regulations and procedures. His prayer for relief seeks immediate release or an evidentiary hearing on his writ.
The defendants filed an exception of no cause and/or no right of action on the basis that Sinclair's complaint was in reality an attack on the parole board's decision regarding his release. The defendants averred that because LSA-R.S. 15:574.11 precludes any right of appeal from such a decision, Sinclair's claims should be dismissed. The exception of no cause of action was argued to a commissioner in the Nineteenth Judicial District Court, who upheld the exception and dismissed Sinclair's case.[2]
In written reasons, the commissioner noted the petition was styled as an application for a writ of habeas corpus, but found it was, in fact, a request for review of a decision of the parole board. Under LSA-R.S. 15:574.11, no prisoner has the right to appeal a decision of the parole board regarding the granting or denial of parole. Since most of Sinclair's allegations concerned the merits of the parole board's decision, and those issues were not appealable, the commissioner found he could not maintain his action. The commissioner further noted the Louisiana Supreme Court's statement in Bosworth that the Louisiana statutory scheme for parole does not create an expectancy of release or a liberty interest for parole-eligible inmates and that the parole board has full discretion when considering requests for early release. The commissioner concluded that because Sinclair had failed to demonstrate a violation of his constitutional rights and because the merits of the parole board's decision could not be appealed, the exception of no cause of action must be upheld.
Sinclair applied to this court for a writ of certiorari, which was denied because the trial court's judgment granting the exception of no cause of action and dismissing the suit with prejudice was an appealable judgment.[3] This court ordered the district court to treat the notice of intent to seek writs as a request for an appeal of the judgment, and it is that appeal which is currently before this court.[4]

APPLICABLE LAW

No Cause of Action
The peremptory exception of no cause of action is designed to test the legal sufficiency of the petition by determining whether plaintiff is afforded a remedy in law, based on the facts alleged in the pleadings. Allied Signal, Inc. v. Jackson, 96-0138 (La. App. 1st Cir. 2/14/97), 691 So.2d 150, 156. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. LSA-C.C.P. art. 931. For purposes of ruling on the exception, the court must accept all well-pleaded facts in the petition and any annexed documents as true. Ostheimer v. Venvirotek of Louisiana, Inc., 95-2126 (La.App. 1st Cir. 4/30/96), 674 So.2d 337, 343. The court should sustain the exception only if the law affords no remedy under any evidence that is admissible under the pleadings. Strickland v. Layrisson, 96-1280 (La.App. 1st Cir. 6/20/97), 696 So.2d 621, 624.

*460 Writ of Habeas Corpus

Louisiana courts have constitutional authority to issue writs of habeas corpus. LSA-Const., art. I, § 21 and art. V, § 2. See State v. Terry, 458 So.2d 97, 100 (La.1984). Habeas corpus is a writ commanding a person who has another in his custody to produce him before the court and to state the authority for the custody. LSA-C.Cr.P. art. 351. Generally, habeas corpus deals with pre-conviction complaints concerning custody, and is not the proper procedural device for post-conviction relief. LSA-C.Cr.P. art. 351 and Official Revision Comment (c). It is not available to contest the validity of the conviction or to have the sentence set aside; such claims are considered requests for post-conviction relief. See State ex rel. Lay v. Cain, 96-1247 (La.App. 1st Cir. 2/14/97), 691 So.2d 135, 137; State ex rel. James v. State, 640 So.2d 259 (La.App. 1st Cir.1993).
However, there are instances in which the writ of habeas corpus is applicable in a post-conviction setting. See Bosworth, 627 So.2d 629 (inmates seeking to be declared eligible for immediate parole consideration); State ex rel.Lay, 691 So.2d 135 (inmate claiming his transfer from one prison to another was illegal); Mole v. Louisiana Board of Parole, 93-1524 (La.App. 1st Cir. 5/20/94), 637 So.2d 785 (inmate whose parole was revoked challenging computation of his release date); State ex rel. Bartie v. State, 501 So.2d 260 (La.App. 1st Cir.1986) (inmate challenging his lawful custody on ground he was not given proper credit for time spent in halfway house or on parole). These cases are controlled by LSA-C.Cr.P. art. 362(2), which states:
If the person in custody is being held by virtue of a court order, relief shall be granted only on the following grounds:
* * * * * *
(2) The original custody was lawful, but by some act, omission, or event which has since occurred, the custody has become unlawful....

Parole
The parole board consists of seven members who serve full time and meet in three-member panels at least quarterly to hold hearings on parole applications. Three votes of a three-member panel are required to grant parole or, if the panel is larger than three persons, a unanimous vote of those present is required to grant parole. LSA-R.S. 15:574.2(A)(1), (A)(2), and (B)(1). The parole board is to consider all pertinent information with respect to each prisoner eligible for parole, including the nature and circumstances of the prisoner's offense, his prison records, the pre-sentence investigation report, any recommendations of the chief probation and parole officer, and any information and reports supplied by the staff. LSA-R.S. 15:574.4(C)(1). The statutory scheme describes various circumstances under which an inmate becomes eligible for parole consideration. Under LSA-R.S. 15:574.4(A)(3), commonly referred to as "the old-timers law," any inmate committed to the DPSC for a term or terms of imprisonment with or without benefit of parole for thirty years or more shall be eligible for parole consideration upon serving at least twenty years of the term or terms of imprisonment in actual custody and upon reaching the age of forty-five. This provision does not apply to a person serving a life sentence unless the sentence has been commuted to a fixed term of years. LSA-R.S. 15:574.4(E) states, in pertinent part, that:
A parole shall be ordered only for the best interest of society, not as an award of clemency, and upon determination by the board that there is reasonable probability that the prisoner is able and willing to fulfill the obligations of a law-abiding citizen so that he can be released without detriment to the community or to himself.

Constitutional Due Process
The seminal case applying constitutional due process principles to inmates' claims that parole had been unconstitutionally denied to them is Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). There the court noted:
The Due Process Clause applies when government action deprives a person of liberty or property; accordingly, when there is a claimed denial of due process we *461 have inquired into the nature of the individual's claimed interest.... This has meant that to obtain a protectible right "a person ... must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."
Greenholtz, 442 U.S. at 7, 99 S.Ct. at 2103-04, citing Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). While noting there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence, the court found that the mandatory wording of the Nebraska parole statute created a presumption that parole release would be granted if certain conditions were met. The Nebraska statute said the parole board "shall order [the inmate's] release" unless certain conditions indicated release should be deferred. Greenholtz, 442 U.S. at 11, 99 S.Ct. at 2106. The court concluded that if none of those conditions were present, the inmate had a legitimate expectation of release, which was entitled to some measure of constitutional due process.
In the later case of Board of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987), the court examined a Montana parole statute, which stated, "the board shall release [any inmate] on parole... when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community." Board of Pardons v. Allen, 482 U.S. at 376, 107 S.Ct. at 2420. Because the statute used mandatory languageshallto create a presumption that parole release would be granted when the designated findings were made, a liberty interest protected by the due process clause existed.
In making the procedural due process analysis, the court uses a two-step inquiry: first, whether the state has deprived a person of a liberty or property interest; if there has been such a deprivation, the second inquiry is whether the procedures relative to that deprivation were constitutionally sufficient. Welch v. Thompson, 92-3525 (5th Cir. 5/13/94), 20 F.3d 636, 639. In all of the cases in which due process challenges were based on the Louisiana parole or work release statutes, the courts have found no liberty interest entitled to the protection of due process. See Welch, 20 F.3d 636 (prison work release statutes do not contain mandatory language that a prisoner shall be eligible and approved for work release if certain criteria are met); Merit v. Lynn, 92-0681 (W.D.La.3/28/94), 848 F.Supp. 1266 (Louisiana statute governing parole did not create any constitutionally protectible expectancy of release); Bosworth, 627 So.2d 629 (Louisiana statutes regarding pardon and parole do not implicate due process rights of inmates incarcerated for life, as parole statutes do not create expectancy of release or liberty interest).

APPLICATION OF LAW TO FACTS
We note first that we disagree with the commissioner's finding that this case is not appropriate for a writ of habeas corpus, being rather in the nature of an appeal of the parole board's decision, and therefore prohibited by statute. Under the Bartie analysis, the claims raised by Sinclair are properly considered by writ of habeas corpus. He does not contest his conviction or sentence, so this is not an application for post-conviction relief. His initial custody was lawful, but he claims this initially lawful custody became unlawful because the parole board did not afford him due process in considering his application for parole. He asserts a liberty interest inherent in certain of the Louisiana parole statutes entitling him to the protection of due process, and maintains because he meets all the criteria for parole and it was unconstitutionally denied to him, he is entitled to immediate release on parole.
However, the fact that this action may be properly maintained as a petition for a writ of habeas corpus does not end the inquiry into whether a cause of action has been stated. That inquiry also addresses whether there is any legal remedy for the deprivation alleged in Sinclair's petition, assuming all the facts of the petition and attached exhibits are true. Although this court must and does accept those facts as true, it does not have to accept the petition's statements of law as true. In other words, this court does not have to accept the "fact" that Sinclair has a protected liberty interest in *462 parole, as he alleges. That allegation is a conclusion of law, not a statement of fact.
And, as the commissioner noted, that issue of law has already been addressed by the Louisiana Supreme Court in the Bosworth case, and the determination there was adverse to Sinclair's position. Although, as Sinclair argues, the precise issue of that case differs from the issue before us, we agree with the commissioner that the Bosworth analysis and decision controls here. In Bosworth, 627 So.2d at 631, the court examined the Louisiana parole scheme and emphasized that "[t]he conditions of parole as well as the granting or revocation thereof rest in the discretion of the Board of Parole...." (emphasis added). The court mentioned the "old-timers law" in its analysis of the whole parole scheme, observing that the legislature has devised a comprehensive system providing for parole consideration for inmates meeting specified standards and criteria, and has given the parole board authority to make the final decision of whether to release an inmate on parole. The court concluded:
Reviewed against Greenholtz and Board of Pardons v. Allen, it is apparent that the Louisiana parole statutes do not create an expectancy of release or liberty interest in general, or for those with life terms in particular. Inmates meeting standards contained in the law do have a statutory right to parole consideration, but the Parole Board has full discretion when passing on applications for early release.
Bosworth, 627 So.2d at 633 (emphasis added).
If there is no liberty interest at stake, the constitutional protections of due process are not implicated. Therefore even though the facts alleged in the petition, as supported by the exhibits, demonstrate that Sinclair is fully rehabilitated and is clearly eligible for parole consideration, the Louisiana parole scheme simply does not require that he be paroled for that reason, and the procedures used by the parole board in deciding not to release him are beyond the scope of this court's review in the context of this case.[5] Accordingly, although Sinclair has certainly stated a claim, it is not one for which the current state of the law provides a remedy, regardless of any evidence that may be admissible under the pleadings. For this reason, the commissioner correctly sustained the exception of no cause of action.

CONCLUSION
The trial court's judgment, sustaining the exception of no cause of action and dismissing the plaintiff's claims, with prejudice, is hereby affirmed.
AFFIRMED.
NOTES
[1] Sinclair's brief to this court indicates he had a rehearing before the parole board in August 1995, and release was again denied on a 2-1 vote, based on the serious nature of the offense and law enforcement and/or judicial objection.
[2] The office of commissioner of the Nineteenth Judicial District Court was created by LSA-R.S. 13:711 to hear and recommend disposition of criminal and civil proceedings arising out of the incarceration of state prisoners. The commissioner's written findings and recommendations are submitted to a district judge, who may accept, reject, or modify them. If the parties consent to adjudication by the commissioner, the commissioner's entry of judgment is simply signed by the judge of the district court. LSA-R.S. 13:713(E)(1); see Bosworth, 627 So.2d at 631, n. 3.
[3] The parties had consented to adjudication by the commissioner and the commissioner's judgment dismissing Sinclair's case, with prejudice, was appealable in the same manner as an appeal from any other judgment of a district court. LSA-R.S. 13:713(E)(2).
[4] See State ex rel. Sinclair v. Kennedy, 96-0180 (La.App. 1st Cir. 2/9/96) (unpublished writ).
[5] In Mole, 637 So.2d 785, an inmate petitioned for judicial review in an action for habeas corpus after first exhausting his remedies in an administrative review process in the prison. In that context, this court reviewed the district court's decision to decide whether it had correctly determined the parole board's computation of the inmate's release date was "arbitrary, capricious, and an abuse of discretion."